NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 12, 2008
Decided October 3, 2008

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-3141

| | |
|---|---|
| OMAR KHAIRI JANEM, | Petition for Review of |
| *Petitioner*, | an Order of the Board of |
| | Immigration Appeals |
| *v.* | |
| | No. A96-167-261 |
| MICHAEL B. MUKASEY, | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Omar Khairi Janem is an ethnic Palestinian and a citizen of Jordan. He arrived in Chicago on March 20, 2002, as a nonimmigrant visitor with authorization to remain in the United States until September 20, 2002. But he didn't leave. Instead, he eventually applied for asylum, withholding of removal, and relief under the Convention Against Torture. Following a hearing, an IJ denied his requests for relief. The Board of Immigration Appeals affirmed the decision without issuing a new opinion. In his

petition for review in this court, Janem raises issues only relating to his asylum application.

Janem claims that he is a refugee--that is, that he has suffered past persecution or has a well-founded fear of future persecution--because he is a homosexual, a social group targeted for abuse in Jordan. In support of his claim, Janem testified during the first day of his hearing that he and his family moved to Jordan from the West Bank territory in Israel when he was 18 years old. He graduated from a university in Amman with a degree in pharmacy. During his time as a university student, he and his family began receiving harassing telephone calls, in which the callers said, for instance, that the family was "going on the wrong path and that we had to go back to the basics, to . . . our religion." Janem said he believed the calls came from religious persons because the conversations included references to verses from the Koran. Neither Janem nor his family reported the calls to the police because he says in Jordan "if someone is bad that's homosexual then it's a big deal, it's something, but nobody will tolerate, it will be like a scandal."

Janem described another incident in which someone threw a gas canister at the wall of his house. Janem's family reported the incident to the police, who inspected the house and filed a report.

The primary incident on which Janem relies occurred the day he graduated from the university. He was with his friend (Saed) and the two were kissing. Someone began insulting them, referring to Janem's homosexuality, accusing the two of immorality, and beating Janem on the head and back. One of the attackers threw a gas canister on Janem's shoulder, causing gas to spill over his body. Then someone held up a lighter and said that he was going to burn Janem alive.

University security officers intervened and placed at least one of the assailants in custody. The officers asked Janem to file a police report, but he declined to do so because "it would have increased to something like a scandal against me. So I didn't want, I was scared that this would spread and everybody would know it." Following the attack he hid for three or four days, and the incident caused him to seek psychiatric treatment.

Immediately after the attack, the number of phone calls to his home increased with callers threatening him, saying, for instance, "this time we missed you, but next time we will kill you, we will burn you if you don't stop that behavior and how you are doing things." The callers made reference to Sharia law and read verses from the Koran. These calls were not reported to the police, Janem says, because homosexuality is regarded in Jordan in a highly negative manner.

After the incident Janem returned to the university during a semester break to obtain a copy of his graduation certificate. He said he could return during the break because no students were on campus. Then he obtained a visitor's visa and entered the United States on March 20, 2002. It was his second visit to this country. He had been here for several months in 2001 but returned to Jordan to complete his studies.

At the end of the day on which this testimony was given, the IJ suggested to Janem's attorney that he "might want to consider an expert on homosexuals and [the] threat to them in Jordan . . . ." The hearing did not reconvene until 11 months later, at which time counsel stated that Janem could not afford an expert witness. He also stated that Janem had no additional documents regarding the treatment of homosexuals in Jordan other than a travel report from the British embassy that stated that under "Jordanian law homosexuality is illegal. Public displays of affection between homosexual couples could result in arrest and prison sentences." Janem presented various documents commenting on the treatment of homosexuals in Muslim countries in general, but not specifically in Jordan. In addition, Janem testified as to few additional details about the incidents he referred to earlier.

The primary issue raised in the petition for review involves whether Janem has established past persecution or a well-founded fear of future persecution. Because the BIA affirmed the IJ's decision without opinion, we review the IJ's factual findings and analysis. Boci v. Gonzales, 473 F.3d 762 (7th Cir. 2007). The factual findings are reviewed under a highly deferential version of the substantial evidence test. INS v. Elias-Zacarias, 502 U.S. 478 (1992); Karapetian v. INS, 162 F.3d 933 (7th Cir. 1998). We inquire only whether the decision has the support of "reasonable, substantial, and probative evidence on the record considered as a whole." Elias-Zacarias, at 481. We disturb the agency's findings only if the record is so compelling that no reasonable fact finder could fail to find a fear of persecution. We will not reverse the BIA

determination even if we would, in the first instance, have decided the case differently. Yadegar-Sargis v. INS, 297 F.3d 596 (7th Cir. 2002).

The Attorney General may grant asylum to an applicant who demonstrates by credible evidence that he is eligible because he is a "refugee" and that he merits a favorable exercise of the Attorney General's discretion. 8 U.S.C. § 1158(a). A refugee is a person who is unable or unwilling to return to his country of origin "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42). The burden of proof is on the applicant. 8 C.F.R. § 208.13(a); Sayaxing v. INS, 179 F.3d 515 (7th Cir. 1999). To demonstrate a well-founded fear of future persecution, the applicant must show both his own subjective fear of persecution on the basis of a protected ground and that his fear is objectively reasonable. INS v. Cardoza-Fonseca, 480 U.S. 421 (1987).

To establish his claim, Janem must show that he is a homosexual. Although the IJ expressed dissatisfaction with Janem's failure to provide corroboration of his claim, he found that if Janem's testimony were accepted as credible, he is a member of that particular social group. For purposes of his decision, the IJ assumed that Janem was a homosexual. Similarly, the IJ assumed that the incidents Janem related occurred even though there was no corroborating evidence to support his testimony.

But, even assuming the testimony was true, and even though homosexuals were vulnerable in Jordan because, the IJ said, homosexuality is illegal in that country, he found that the events did not "portent future mistreatment." That conclusion was based on, among other things, that Janem was not mistreated by the police; i.e., there was no governmental action; and furthermore, in the graduation day attack, the university security officials responded to protect him. The IJ found that Janem had failed to meet his burden of proof.

The determination that Janem failed in that regard is not so far off base that we could (or must) set it aside. In addition to the failure noted by the IJ, Janem failed to show that homosexuality is illegal in Jordan. It might be, but there is no credible proof of illegality in this record. Janem relies on the document we previously mentioned, which was apparently disseminated by the British Embassy in Amman. It states that "[u]nder Jordanian law homosexuality is illegal." The deficiencies of this travel

advisory as evidence of the law of Jordan are obvious. For one thing, it is clearly second-hand information. There is no reference to the statute and no indication of the scope of the prohibition or the penalty for a violation. After the first day of the hearing, the IJ advised Janem to submit evidence as to the manner in which Jordan treats homosexuals. The hearing did not resume until almost a year later, at which time Janem said he could not afford expert testimony. However, it is hardly possible that in those intervening months Janem could not have obtained a copy of the Jordanian law against homosexuality, if indeed such a law exists.

The primary deficiency in the proof, however, is, as the IJ noted, proof of government involvement. Janem recites incidents in which he was abused. Importantly, the abuse is at the hands of private individuals. An applicant cannot claim asylum on the basis of "persecution by a private group unless the government either condones it or is helpless to prevent it . . . ." Hor v. Gonzales, 421 F.3d 497, 501 (7th Cir. 2005). The only evidence in the record regarding government involvement is to the contrary. When gas was thrown on his parents' house, the police investigated. And when he was attacked on campus, the university security officers protected him. Although they were probably private officers, they urged Janem to file an official police report, which he declined to do because he feared scandal. That he feared scandal may say something about Jordanian attitudes, but it does not prove government involvement in acts of persecution. The only evidence in the record shows that the police did not refuse to protect him.

Other evidence in the record also undercuts Janem's claims. He attended the university and obtained a degree. He traveled, including a trip to the United States, after which he returned to Jordan to continue his studies. The IJ's finding that Janem has not met his burden of proof is supported by the record.

Accordingly, the petition is DENIED.