In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-3074

EMIL MEKHTIEV, LIUDMILA MEHTIEVA,
and KAMILLA MEKHTIEVA,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
Nos. A 097 115 592/593/594

ARGUED FEBRUARY 25, 2009—DECIDED MARCH 23, 2009

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioner Emil Mekhtiev
("Mekhtiev") is a dual citizen of Turkmenistan and
Russia who seeks asylum and withholding of removal, as
well as relief under the United Nations Convention
Against Torture. Mekhtiev's wife and daughter, Liudmila
and Kamilla Mekhtieva, also seek this relief; their claims
are derivative of Mekhtiev's request for asylum and their

eligibility for asylum is predicated upon Mekhtiev's claim. *See* 8 U.S.C. § 1158(b)(3).

Mekhtiev petitions this court for review of the Board of Immigration Appeals's order dismissing his family's appeal. For the reasons explained below, we affirm the BIA's dismissal.

## I. Background

### A. Factual History

Mekhtiev was born in Ashgabad, Turkmenistan to his father, Tofik Mekhtiev and his Russian mother, Ivanova Alla Nikolaevna. His parents divorced and Mekhtiev was raised in Turkmenistan by his mother and grandmother. After marrying, Mekhtiev began a business in 1999 "buying and selling different goods." In 2000, Mekhtiev's father emigrated to the United States pursuant to the diversity visa lottery program.

Neither Mekhtiev nor any of his family members have ever belonged to or been associated with any organizations or political parties. Rather, Mekhtiev premises his asylum claim on encounters he had with the General Prosecutor's office of the Turkmen government in early 2003. He contends that he fears persecution by the General Prosecutor's office if he returns to Turkmenistan.

In November 2002, an assassination attempt was made against the president of Turkmenistan. Inspector Derya Ataev, an investigator with the General Prosecutor's office, made inquiries in connection with the assassina-

tion attempt. On January 8, 2003, Mekhtiev was called to the General Prosecutor's office for questioning regarding his father. The purpose of this interrogation, according to Mekhtiev, was to enlist Mekhtiev's help in convincing his father to return to Turkmenistan to testify against Guvanch Djumaev, an individual accused of orchestrating the attempted assassination. Mekhtiev's father knew Djumaev fairly well because they had been classmates and worked together on projects involving their businesses. Mekhtiev himself did not know Guvanch Djumaev, but he did have an acquaintance-type relationship with Djumaev's son, Timur Djumaev. He met Timur in the 1990s through a mutual friend and occasionally encountered him at the bank where they each maintained accounts.

During the January 2003 interrogation, Ataev questioned Mekhtiev about trips Mekhtiev made to the United States and Moscow in 2002 and also inquired regarding Mekhtiev's relationship with Timur Djumaev. Mekhtiev asserted to the Immigration Judge in this case that "[f]rom the very beginning they hinted that I was a member of the opposition" and involved in the assassination attempt. However, Mekhtiev also admitted that he was never accused of or charged with being a member of the opposition.

After the interrogation, Mekhtiev was detained overnight. Mekhtiev stated that while in custody he was kicked, beaten with heavy bottles containing water, and knocked unconscious. He also said that he, and possibly his family, were threatened with injections of something

that would induce them to tell the authorities "the truth." In documents submitted to the immigration court, Mekhtiev claimed that he needed stitches after the beating and also that he required two weeks of bed rest to recover. At the conclusion of his overnight incarceration, Mekhtiev's passport was confiscated and he claims that he was coerced into signing a document pledging that he would not leave Turkmenistan.

The General Prosecutor's office conducted follow-up meetings with Mekhtiev. In February 2003, Ataev convinced Mekhtiev to persuade his father to return to Turkmenistan. Ataev returned Mekhtiev's passport after Mekhtiev signed another document stating that he would not leave the country. Mekhtiev stated at his hearing that he was threatened with "jail for the rest of [his] life" if he did not get his father back to Turkmenistan to facilitate the criminal investigation of Djumaev. Mekhtiev was apparently not detained or injured during these subsequent meetings.

Mekhtiev and his family left Turkmenistan soon after the February 2003 meeting and arrived in the United States on March 28, 2003. They were authorized to remain in the United States until September 28, 2003. Before their stay expired, Mekhtiev and his family filed a request for asylum with the U.S. Asylum office. Mekhtiev contended that if he returned to Turkmenistan he would be arrested for violating his agreement that he would not leave the country and that the government would fabricate a criminal case against him by planting drugs on him or placing a gun in his suitcase. Mekhtiev also sur-

mised that the government suspected him of involvement in the assassination attempt and might charge him with treason. After an interview with an asylum officer it was determined that Mekhtiev and his family were not eligible for asylum and their case was referred to the immigration court.

Mekhtiev testified at his hearing that he did not think Turkmenistan authorities were any longer making arrests connected to the assassination attempt. Mekhtiev did state that his aunt was convicted of unlawful possession of firearms in her home in January 2005, and that he believed that the charges were fabricated by the government to induce his father to return to Turkmenistan. However, Mekhtiev offered no statement from his aunt or any other evidence related to the conviction.

## B. Procedural History

On February 8, 2007, an Immigration Judge (IJ) denied petitioners' application for asylum and ordered them removed to Russia or alternatively Turkmenistan.[1] The IJ determined that the treatment Mekhtiev experienced when he was held overnight by the General Prosecutor's office did not amount to past persecution as contemplated by the relevant case law. The IJ also found that

---

[1] As an initial matter, the IJ determined that Mekhtiev and his family had not been resettled in Russia prior to entering the United States such that asylum relief was precluded. No party has appealed this ruling and we do not explore it here.

any interest the Turkmenistan government had in questioning or harming Mekhtiev in order to gain his assistance in the criminal investigation of the Djumaevs appeared to be moot because Djumaev and his son had both by that time been convicted in connection with the assassination. The IJ concluded that Mekhtiev's difficulties stemmed from a discrete criminal investigation. Since Mekhtiev had been able to live in peace in Turkmenistan before the investigation, the judge concluded that the evidence did not reflect an objective basis for finding a well-founded fear of future persecution.

The IJ also found that Mekhtiev's claim was undermined by the lack of any protected ground for asylum. In its order, the IJ noted that Mekhtiev's incarceration and beating did not occur because of Mekhtiev's activities but rather occurred as the result of the political upheaval following the presidential assassination attempt. The IJ did not believe that Mekhtiev's experiences were connected to any political opinion but rather were the result of Mekhtiev's personal relationship with two people supposedly involved in the assassination attempt who had since been convicted.

On appeal to the BIA, Mekhtiev asserted that the IJ erred in finding no nexus between Mekhtiev's fear of returning to Turkmenistan and a protected ground for asylum. Specifically, he argued that the IJ failed to recognize that he feared persecution based on an imputed political opinion. He also argued that the IJ failed to consider his "whole circumstance."

The Board upheld the IJ's decision and dismissed the appeal. The Board concluded that the record only

revealed that the government sought to pressure Mekhtiev to cooperate in getting his father to return to Turkmenistan to testify against Djumaev and that the record did not demonstrate that the government imputed a political opinion to Mekhtiev. The Board observed that Mekhtiev had suffered no harm after the January 2003 incarceration, was never charged or arrested for any crime, and that his passport had been returned to him at a time when other individuals were being arrested based on perceived political opinions. The Board stated that any harm Mekhtiev experienced could qualify as harassment or intimidation but was not so extreme as to rise to the level of persecution. Finally, the Board also rejected Mekhtiev's claim that he had a well-founded fear based on his membership in a particular social group of individuals targeted for their association with members of the opposition.

## III. Discussion

As an initial matter, the government claims that petitioners have raised a number of arguments in this appeal for the first time. The allegedly new arguments include (1) that the General Prosecutor's office only returned Mekhtiev's passport because he was interested in receiving a bribe, not because it did not suspect Mekhtiev of having disfavored political opinions; (2) that Mekhtiev's occasional conversations with Timur Djumaev at the bank where they both held accounts were "secret" such that the Turkmenistan government would have connected Mekhtiev with the opposition; and (3) that

Mekhtiev was targeted based on his association with a social group based on his Russian ethnicity. It does appear that these arguments have been raised for the first time on appeal. In his brief to the BIA, Mekhtiev never mentioned a bribe for his passport, never stated that there were any secret meetings with Timur Djumaev (only that they "saw" each other occasionally at the bank), and never stated anything about Russian ethnicity. *See* Petitioner's Brief before the BIA at 21, 22, 26-27, 29. A petitioner's failure to exhaust remedies with respect to an issue waives consideration of that issue. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006) (where petitioner failed to exhaust his administrative remedies with respect to an issue, 8 U.S.C. § 1252(d)(1) prevents appellate court from considering the issue). Because Mekhtiev did not present these arguments below, they are waived.

We next consider the merits of Mekhtiev's petition. In considering Mekhtiev's claims under the Immigration and Nationality Act (the "Act"), we review legal questions de novo. *See Hartooni v. INS*, 21 F.3d 336, 340 (7th Cir. 1994). However, we defer to the Board's factual findings, reversing the Board only if the record lacks substantial evidence to support its factual conclusions. *See Angoucheva v. INS*, 106 F.3d 781, 788 (7th Cir. 1997); see also 8 U.S.C. § 1105a(a)(4) (requiring appellate courts to uphold the Board's conclusions if "supported by reasonable, substantial, and probative evidence on the record as a

whole"). Thus, if the Board concludes that an asylum applicant fails to present specific facts that he or she has been persecuted or has good reason to fear that he or she will be singled out for persecution in the future, we will not disturb that conclusion unless the evidence is "so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Angoucheva*, 106 F.3d at 788 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)).

In this appeal, it appears that the Board's decision is supported by substantial evidence in the record. First, it does not appear that Mekhtiev suffered past persecution as that term has been understood in our case law. To demonstrate a well-founded fear of future persecution, the applicant must show both his own subjective fear of persecution on the basis of a protected ground and that his fear is objectively reasonable. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Janem v. Mukasey*, 295 Fed. Appx. 89, 91 (7th Cir. 2008). We have recognized that persecution "means more than plain harassment and may arise from actions such as 'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Tesfu v. Ashcroft*, 322 F.3d 477, 481 (7th Cir. 2003) (quoting *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir. 1995)). Here, Mekhtiev was detained overnight and beaten one time in connection with the criminal investigation into the presidential assassination attempt. His resultant injuries do not appear to have been severe: he testified that he required only stitches and bed rest. Mekhtiev was questioned by prosecutors on subsequent occasions and

was not incarcerated or physically harmed. In contrast to the estimated one hundred persons who were arrested and charged in connection with the presidential assassination attempt, *see* AR 400, 408, 473, 484, Mekhtiev was never arrested or charged with a crime and was allowed to keep his passport.

We note that with regard to the past persecution issue, this case is similar to *Prela v. Ashcroft*, 394 F.3d 515 (7th Cir. 2005). In that case, the petitioner had been interrogated at various times by the police, detained for twenty-four hours, harassed for money, and beaten, causing an injury to his hands. *Id*. at 518. We held that while these events qualified as "harassment or even intimidation," they were not so extreme that they rose to the level of persecution. *Id*. Likewise here, while Mekhtiev's treatment by the General Prosecutor's office was certainly deplorable, it does not appear that the bad treatment was of the degree we recognize as persecution. This Court has held that similar or even more severe conduct is not persecution. *See, e.g., id.*; *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (finding that detention for three days without food and beatings that caused facial swelling did not compel a finding of past persecution); *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir. 1990) (affirming finding that periodic searches, arrests, and detainments did not constitute past persecution). The evidence in this case thus does not compel a finding that Mekhtiev was persecuted in the past.

The Board's conclusion that Mekhtiev does not have a well-founded fear of future persecution is also supported

by substantial evidence. The Board reasoned that any interest the General Prosecutor's office had in Mekhtiev's father had dissipated following the Djumaevs' conviction and the passage of six years since Mekhtiev's last interview by Turkmen authorities. *See, e.g., Useinovic v. INS*, 313 F.3d 1025, 1032-33 (7th Cir. 2002) (fact that applicant did not suffer severe consequences for his activities combined with the passage of time since those activities decreased the likelihood of future persecution). In addition, Mekhtiev acknowledged that he is not aware of any arrests tied to the assassination attempt since 2006. We thus conclude that this portion of the BIA's ruling was also supported by substantial evidence.

Finally, as both the IJ and Board recognized, Mekhtiev's claim does not show that any of the problems he encountered in Turkmenistan were connected to a protected ground for asylum. Mekhtiev argues that he was targeted because of an imputed political opinion. But to succeed on an imputed political opinion claim, Mekhtiev must show that "persecutors attributed a political opinion to him and that this attributed opinion was the motive for the persecution." *Sankoh v. Mukasey*, 539 F.3d 456, 471 (7th Cir. 2008) (internal quotation marks and citation omitted). Here, the record shows that Mekhtiev's detention and interrogations arose because the General Prosecutor's office was investigating the presidential assassination attempt and sought to have Mekhtiev's father testify against Djumaev. Mekhtiev's appellate brief states that his questioning was "a calculated effort by the prosecutor to pressure [Mekhtiev] to lure his father back to Turkmenistan so [his] father could testify against

Djumaev." Mekhtiev cites nothing else in the record that suggests that he was targeted for a political opinion, and we thus conclude, like the BIA, that he has not shown that he has a well-founded fear of future persecution because of an imputed political opinion. *See, e.g., Lwin v. INS*, 144 F.3d 505, 509 (7th Cir. 1998) (no imputed political opinion where Burmese police interrogation focused on the whereabouts of petitioner's son and petitioner identified no situation where the government held him accountable for his son's activities).

Mekhtiev's asylum claim fails because the record does not compel the conclusion that the BIA's findings were in error. Because Mekhtiev cannot establish that she qualifies for asylum, he cannot meet the more stringent test for withholding of removal. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 652 (7th Cir. 2008). To establish eligibility for withholding of removal, Mekhtiev must show that it is more likely than not that he would be subject to persecution in the country to which he would be returned. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)) (discussing the clear probability standard under Section 243(h) of the Immigration and Nationality Act); *see also Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007) ("To establish a clear probability of persecution, the applicant must demonstrate that it is more likely than not that [the applicant] would be subject to persecution in the country to which [the applicant] would be returned.") (internal quotation and citation omitted). Mekhtiev has not shown such a probability here. Similarly, he has not established that it is more likely than not that he would be tortured

if returned to Turkmenistan, so his request for CAT relief fails as well. *See* 8 C.F.R. §§ 208.16(c), 208.18; *LaGuerre v. Mukasey*, 526 F.3d 1037, 1040 (7th Cir. 2008).

## IV. Conclusion

The Board's findings were supported by substantial evidence. We thus AFFIRM the dismissal of the Mekhtievs' appeal.