NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 7, 2015
Decided December 22, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1220

| | |
|---|---|
| NARAYAN KHATRI CHETRI, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A200-571-131 |
| | |
| LORETTA E. LYNCH, | |
| Attorney General of the United States, | |
| *Respondent*. | |

## O R D E R

Narayan Khatri Chetri, a Nepalese citizen, sought asylum, withholding of removal, and protection under the Convention Against Torture based on harm he suffered at the hands of Maoist Party members because of his contrary political views. The immigration judge ("IJ") concluded that the harm was not severe enough to be deemed persecution and, in any case, the Nepalese government is not unwilling or unable to control the Maoist Party and its supporters. Because these conclusions are supported by substantial evidence, we deny the petition.

Khatri Chetri crossed the border from Mexico into San Ysidro, California, in 2011 and sought asylum, asserting a fear of return to Nepal. An asylum officer found his fear

credible and referred his case to an IJ, *see* 8 C.F.R. § 208.30(f). Shortly after being paroled into the United States, he settled in Madison, Wisconsin, and sought a change of venue from the immigration court in California to Chicago. After an IJ determined that he was removable for lacking a valid visa or entry document, *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I), Khatri Chetri applied for asylum on the ground that he had been persecuted by members of the Maoist Party, who he says objected to his participation in a rival political party, the Nepali Congress Party.

During his hearing, Khatri Chetri described his political participation in Nepal. He stated that he is from Khanchikot, a small village of approximately 3,500 people. Though a farmer by trade, he had been a member of the Nepali Congress Party since 2003 and served as the secretary of the party's organization in his village since 2005.

From the early 1990s through 2008, Nepal's ruling government was steered alternately by two political parties: the social-democratic Nepali Congress Party and the Communist Party of Nepal (United Marxist-Leninist). Since the late 1990s, a breakaway group of Maoist militants calling itself the Communist Party of Nepal (Maoist) had waged a ten-year civil war against the ruling government. The rebels' insurgency formally ended in 2006, when the Nepalese government and Maoist forces signed a peace accord. Under the agreement the Maoists were brought into the government as a mainstream political party, and elections for the new legislature were held in 2008.

During the run-up to the election in 2008, Khatri Chetri campaigned for the Nepali Congress Party's candidate to represent his district. In April 2008 that candidate won election in Khatri Chetri's district, but the Maoist Party garnered a plurality of the seats in the national assembly.

After his candidate's victory rally, a mob of 20 to 25 armed Maoist supporters abducted Khatri Chetri from his home. He identified them as Maoists by their headscarves, which were inscribed with "YCL," an abbreviation for the Maoist youth wing—the Young Communist League. According to Khatri Chetri's testimony, the mob led him into the forest, approximately one kilometer from his home, and tied him to a tree. For 45 minutes the men beat him and demanded to know why he had campaigned for the Nepali Congress Party candidate. The men struck him with an iron rod and used it to stab him twice in the chest. Eventually, they untied him and left.

The beating left Khatri Chetri in severe pain and unable to walk. His brother— who had followed the mob at a distance—found Khatri Chetri and took him to the

hospital, where he remained for three days. He received seven or eight stitches for one of the wounds on his chest and bandages for the rest of his injuries.

Fearing Maoist retaliation, Khatri Chetri did not report the incident to the police. He did, however, inform the Nepali Congress Party's committee in his district. The district committee issued a press release and, together with the party's newly elected representative in the legislature, held a local rally condemning the attack. The local police formed an investigation commission and conducted an inquiry, a response that Khatri Chetri attributed to the public outcry in his district. The police questioned Khatri Chetri in the hospital, but he could not identify anything about his attackers other than that he believed them to be Maoists. The police blamed Maoists for the attack, but arrested no one. Despite his disappointment with the outcome, Khatri Chetri testified that he was satisfied with the investigation. After his release from the hospital, he returned to his village and resumed his work as a farmer and as the local Nepali Congress Party secretary.

Two years passed without incident until June 2010, when Khatri Chetri says that he received a phone call from a man identifying himself as Saphal, the secretary of the Maoist Party for the surrounding district. Saphal told Khatri Chetri that he had ten days to quit the Nepali Congress Party and join the Maoist Party or "physical actions" would be taken against him. Khatri Chetri understood this as a threat that he would be killed. But he did not call the police because they had failed to arrest anyone for the attack in 2008, and he feared that involving the police would give the Maoists reason to harm his family. He promptly fled the country.

Since leaving Nepal, Khatri Chetri has not been contacted by Maoists. But he believes they are looking for him because his wife—still living in Nepal—receives many "hoax" phone calls in which there is no answer when she picks up. Also, he says that some Maoists approached his father in late 2012 demanding to know his son's whereabouts.

The immigration judge denied Khatri Chetri's application for asylum. The IJ found Khatri Chetri generally credible, but doubted his testimony about the threatening phone call he received in 2010. According to the IJ, it was unlikely that Khatri Chetri would not have reported this incident to the police or his political party after the support he received following the first attack. The IJ concluded that the Maoists' actions, though deplorable, were not severe enough to rise to the level of persecution. The IJ added that Khatri Chetri apparently was "unaffected" by the attack in the forest because he

resumed his position in the local party organization and continued to be politically active.

The IJ also concluded that even if the harm suffered by Khatri Chetri rose to the level of persecution, he had not shown that it—or the threatening phone call in 2010—was perpetrated by the Nepalese government or by individuals that the government would be unwilling or unable to control. The IJ noted that the Nepali Congress Party was a part of Nepal's ruling government at the time of his decision. The IJ also was not persuaded that the police were unwilling to protect Khatri Chetri: After all, the police opened an investigation in 2008 after the Nepali Congress Party condemned the attack on Khatri Chetri, and he never sought protection after the 2010 phone call.

The Board upheld the IJ's ruling, agreeing with the IJ that "in the aggregate" the two incidents in which Maoists harmed or threatened Khatri Chetri do not constitute persecution. The Board also agreed with the IJ's assessment that the Maoists are not agents of the government and that Khatri Chetri did not show that the government is unwilling or unable to protect him. Unlike the IJ, the Board also addressed Khatri Chetri's fear of future persecution, stating that the anonymous phone calls to his wife and the Maoists' inquiry into his whereabouts were insufficient to show that anyone is targeting him.

In this petition Khatri Chetri first challenges the IJ's basis for finding that the harm he suffered did not rise to the level of persecution. He asserts, for instance, that he presented evidence of severe harm but the IJ irrationally denied his claim based on a judgment that he "could have faced worse mistreatment." But the record does not compel the conclusion that his physical mistreatment amounts to persecution. The IJ acknowledged that Khatri Chetri's mistreatment was "serious and condemnable," but lacked the severity to be designated persecution. *See, e.g., Mekhtiev v. Holder*, 559 F.3d 725, 730 (7th Cir. 2009) (no persecution when petitioner was kicked and beaten unconscious with heavy bottles of water, requiring stitches and two weeks' recovery); *Mema v. Gonzales*, 474 F.3d 412, 416–418 (7th Cir. 2007) (no persecution when petitioner was abducted at gunpoint and then beaten unconscious); *Zhu v. Gonzales*, 465 F.3d 316, 319–20 (7th Cir. 2006) (no past persecution when officials kicked, punched, and used a brick to strike petitioner on the head). Moreover, despite Khatri Chetri's return to his political activity after the attack, he was not harmed again by YCL members during the two years he remained in the country.

Khatri Chetri next argues that the IJ failed to adequately consider the severity and immediacy of the call he received in 2010 threatening him because of his work with the Nepali Congress Party. But substantial evidence supports the IJ's conclusion that the threat was not sufficiently immediate or menacing to rise to the level of persecution. Threats constitute persecution "only in the most extreme circumstances," *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006), and here the message was vague (promising "physical actions" against Khatri Chetri) and two years removed from the 2008 beating.

Khatri Chetri also challenges the IJ's alternative finding that he could not establish persecution because he did not show that the Nepali government was unable or unwilling to protect him. But substantial evidence supports the IJ's conclusion that Khatri Chetri failed to meet his evidentiary burden. The IJ acknowledged that conditions in Nepal remained "violent" and that police "are ineffective in curbing violence," but pointed out that "when prodded, the police do take action," and here the police did investigate the attack on Khatri Chetri in 2008. And Khatri Chetri did not report the threatening phone call to police in 2010.

Finally, with regard to the fear of future persecution, Khatri Chetri argues that the IJ and the Board erred by failing to consider his evidence that the Maoists would target him if he were to return to Nepal. But the Board properly discounted his evidence as weak. Not only did he fail to establish that anyone in Nepal was looking for him, but his country-conditions evidence confirmed the Nepali Congress Party's continuing strength, the Maoists' transition from violent group to mainstream party, and the country's increasing political stability. Indeed, the U.S. Department of State has reported that after the most recent election in November 2013, the Nepali Congress Party took a leadership role in a new coalition government with the Communist Party of Nepal (United Marxist-Leninist). *See* BUREAU OF DEMOCRACY, HUMAN RIGHTS & LABOR, U.S. DEP'T OF STATE, COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES FOR 2014: NEPAL 1 (2015).

Unable to establish eligibility for asylum, Khatri Chetri necessarily cannot meet the requirements for withholding of removal, *see Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008), and he failed to show that he would be tortured with the consent or acquiescence of the Nepalese government, *see* 8 C.F.R. §§ 1208.16(c), 1208.18(a). The petition for review is DENIED.