# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3732

ABDELHAK KEDJOUTI,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
A079-605-001

ARGUED MAY 15, 2009—DECIDED JULY 9, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
FLAUM, *Circuit Judges*.

FLAUM, *Circuit Judge*. Abdelhak Kedjouti petitions for
review of a Board of Immigration Appeals (BIA) order
upholding the Immigration Judge's (IJ) denial of his
application for withholding of removal. Because the
BIA's determination was supported by substantial evi-
dence, we deny the petition for review.

## I. Background

Kedjouti was born in Algeria in 1975 and is an Algerian national. In 1996, he was conscripted into the Algerian military, as required of Algerian men. He remained in the military for two years, during which time he received weapons training and was promoted to the rank of sergeant. Kedjouti carried a military identification card even after leaving the military. He testified in front of the IJ that if a government official asked for the card, he was legally bound to present it to that official. Moreover, he needed to present the military card to obtain employment.

Kedjouti also testified that Islamic terrorists in Algeria treat current and former military conscripts as their enemies because they see conscripts as allied with the government. He continued that terrorists often set up fake government checkpoints along Algerian roads where they ask for military identification and then kill men who present it. Two of Kedjouti's friends, who were military members, were killed by Islamic terrorists, as was his cousin. Afraid for his life, Kedjouti fled Algeria and came to the United States in May 2000. He applied for asylum, withholding of removal, and Convention Against Torture (CAT) protection in November 2001.

At his merits hearing in immigration court, in addition to his own testimony, Kedjouti presented the expert testimony of Dr. Allen Christelow. Christelow purported to be "as familiar as one can be [with conditions in Algeria] from a distance," although he stated that he had not

traveled to Algeria since 1985, and he admitted that "the information one gets from Algeria is kind of limited and not always necessarily accurate." He testified that Kedjouti's affidavit was consistent with his understanding of how Islamic terrorists view Islamic law, that is, "[f]rom the extreme Islamist viewpoint, actively supporting the government which was fighting them constituted, from the point of view of Islamic law, an act of kufr, or heathenism." He added that "Islamists believed that all young Algerian men had been duly warned, and that therefore killing conscripts was not only permissible but positively enjoined by divine law." The fact that Kedjouti had achieved the rank of sergeant made it "all the easier [for Islamists] to make the case that he was a staunch supporter of the regime, legally a kafir and thus fair game for roving execution squads," Christelow testified.

On cross-examination of Christelow, the government presented the United States Department of State's 2002 Country Report on Human Rights Practices for Algeria, which stated that there had been a significant decline in killings (1200 deaths to 700 deaths) by Islamic groups over the past year. Government counsel further pointed out that not all 700 people killed were military members, and she asked whether, statistically speaking, current and former military conscripts faced a likelihood of being killed by Islamic terrorists. Christelow admitted that Algeria had approximately 60,000 people serving on active military duty at any given time. However, he maintained that even if 300 of the 700 individuals killed were members of the military, current and former

military personnel in Algeria run a "fairly high risk" of being killed by Islamic terrorists.

On October 1, 2007, the IJ issued a written decision denying asylum, withholding of removal, and CAT protection, but granting Kedjouti voluntary departure. The IJ determined that Kedjouti's asylum claim was time-barred because he did not apply for asylum within one year of entering the United States. The IJ denied Kedjouti's application for withholding of removal, finding that Kedjouti had failed to establish that it was more likely than not that he would face persecution on account of his past military service if he returned to Algeria. In making his determination, the IJ referenced Christelow's testimony that assumed Islamists killed 300 current or former military members in a year, while there are about 60,000 current military members and many more former military members in Algeria. Finally, the IJ concluded that Kedjouti was ineligible for relief under CAT because there was no evidence that the Algerian government instigated, consented to, or otherwise acquiesced in the conduct of Islamic terrorist groups in Algeria.

Kedjouti appealed the IJ's asylum and withholding of removal determinations to the BIA. The BIA, in a separate opinion, upheld the IJ's ruling. The BIA agreed with the IJ that Kedjouti's asylum application was untimely and that there were no changed or extraordinary circumstances to overcome his untimeliness. In terms of withholding of removal, the BIA determined that Kedjouti failed to establish a pattern or practice of persecution by

Islamic terrorist groups against former members of the Algerian military. Like the IJ, the BIA supported its determination by citing Christelow's testimony that a very small percentage of current or former military members who live in Algeria are actually killed by Islamic terrorists. At Kedjouti's request, the BIA vacated the IJ's grant of voluntary departure and ordered Kedjouti removed from the United States to Algeria.

## II. Analysis

Kedjouti petitions for review of the BIA order denying him withholding of removal only. The BIA issued a written opinion agreeing with the IJ's decision, but it did not adopt or supplement it, so we review the BIA decision alone. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). Our case law requires that we review the decision that Kedjouti was not eligible for withholding of removal under a substantial evidence standard. *Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007). We must deny the petition for review if the decision is supported by reasonable, substantial, and probative evidence. *Huang v. Mukasey*, 525 F.3d 559, 564 (7th Cir. 2008). It is not enough that we might have ruled the other way; the evidence must compel that conclusion or we will not overturn the BIA. *Pavlyk v. Gonzales*, 469 F.3d 1082, 1087 (7th Cir. 2006). To qualify for withholding of removal, Kedjouti needed to establish a clear probability, i.e., that it's more likely than not, that he would face persecution in Algeria on account of his "race, religion, nationality, membership in a particular social group, or political

opinion." 8 U.S.C. § 1231(b)(3)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987); *Guardia v. Mukasey*, 526 F.3d 968, 971-72 (7th Cir. 2008).

The evidence in this case is grave. Islamic terrorists' practice of creating fake roadblocks to target and brutally murder members of the Algerian military is appalling.

However, the standard of review provides us no leeway here. Kedjouti's own expert assumed that Islamists killed 300 individuals who had served in the military in a year, while there are about 60,000 current military members and many more former military members in Algeria. The U.S. State Department report supports that statistical assertion, and we defer to State Department reports unless there is a contradictory, "highly credible independent source of expert knowledge*." Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997). There is no evidence that compels the conclusion that it is more likely than not that Kedjouti will face persecution if returned to Algeria, as is required for us to grant a petition of review of a BIA order denying withholding of removal.

### III.  Conclusion

The petition for review of the BIA's order is DENIED.

7-9-09