NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 28, 2010
Decided August 3, 2010

**Before**

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 09-3417 | On Petition for Review of an Order of the Board of Immigration Appeals |
| BABUBHAI K. PATEL, | |
| *Petitioner*, | A098-495-624 |
| *v.* | |
| ERIC H. HOLDER, JR., Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

After Babubhai Patel was placed in removal proceedings by the Department of Homeland Security, he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Following a hearing, an immigration judge ("IJ") denied his asylum request because it was untimely and he had not shown he qualified for an exception to the filing deadline. The IJ also concluded Patel's testimony was not credible and thus he was not entitled to withholding of removal or protection under the CAT. The Board of Immigration Appeals dismissed his subsequent appeal for substantially the same reasons the IJ denied his applications. Patel petitions for review of the Board's order.

Because we lack jurisdiction to review the Board's conclusion that he did not qualify for an exception to the asylum application deadline, we dismiss that portion of his petition. With respect to the part of his petition challenging the Board's rejection of his request for withholding of removal, we deny it because substantial evidence in the record supports the Board's decision.

I.

The Department of Homeland Security charged Babubhai Patel, a native and citizen of India, with removability because he was an alien present in the United States without having been admitted or paroled. In January 2007, he conceded removability but applied for asylum, withholding of removal, and protection under the CAT. In a statement attached to his application, Patel, a Hindu, indicated that he had been a member of the Bharatiya Janata Party ("BJP") since 1986. In December 1992, some of his Hindu BJP friends planned a march to Ayodhya, the location of a Muslim mosque—Babri Masjid—that was erected after Muslims destroyed a Hindu temple on the same site. Patel declined to participate and advocated peace between Hindus and Muslims. Because of his refusal, BJP members pushed his wife and 12-month-old child into a lake where they drowned. He was attacked by BJP extremists the same day. BJP personnel later threatened to hurt and kill him.

At a hearing before an IJ, Patel testified that he had joined the BJP in December 1992 and was a member until 1997. But he could not produce documentation of his membership because he lost it. He stated that in December 1992, ten thousand people, including BJP members, marched to Ayodhya to protest the mosque. Patel wasn't one of them. The last time he saw his wife was November 30, 1992, the day before BJP members pushed her and his daughter into a lake where they drowned. Patel opined that they were killed by BJP members because he refused to participate in the march. He wanted to view their bodies, but he decided against it after hearing that BJP members were lying in wait to kill him. He also stated that he did go to see his wife's body but fled from his village of Dingucha to the city of Ahmedabad after BJP members attacked him. Before fleeing, he filed a police report concerning the killings. Patel testified that he remained a member of the BJP while he was in Ahmedabad. He stayed there until May 1998, when he entered the United States illegally.

In support of his testimony, Patel produced death certificates for his wife and child that were printed in English. He stated that a friend had obtained them from the police station where he had filed a report in 1992; he could not explain why they were issued in English. The death certificates were dated January 6, 1992. The IJ verified that Patel had

joined the BJP in December 1992 and pointed out that his wife had died several months before he joined. Patel responded only that "[t]hey [*indiscernible*] different dates." The IJ then asked Patel whether his wife died before or after he joined the BJP. Patel responded, "before." The IJ queried how she died, given that she died before he joined the BJP. Patel said that the BJP was responsible for her death and that he was a member of the BJP when she died.

Patel also testified that earlier in 2007, a friend from India had told him that BJP members were still searching for him and were bent on killing him because of his refusal to march on the mosque in 1992. He believes that if he goes back to India and complains about his wife's death, the BJP will find out. None of his family in India has ever been threatened by the BJP.

When the IJ asked why Patel did not apply for asylum until after he was placed in removal proceedings, he responded that he had no one to help him and was confused. And when asked to produce a birth certificate for his daughter or a marriage certificate, he explained that a landlord in New Jersey had taken all his materials when he was ill. The IJ inquired why he had not asked the friend in India who had obtained the death certificates to also track down the marriage and birth certificates. Patel replied that those events had happened a long time ago, suggesting they may be difficult to find.

At the end of the hearing, the IJ denied Patel's asylum application because it was filed more than a year after his arrival to the country and Patel had not proven he qualified for an exception to the one-year deadline. The IJ also denied his request for withholding of removal, finding his testimony was not credible because it was inconsistent and implausible, and his documentary evidence did not corroborate his statements. More specifically, the IJ pointed out that Patel had difficulty recalling the events from India, and the death certificates he submitted indicated they were produced by the public health department rather than, as he had said, the police. The IJ opined that even if the documents were authentic, the date of the deaths listed on them (January 6, 1992) did not jibe with Patel's testimony that his wife and child had died in December 1992. The IJ also thought it implausible that the BJP would kill the wife and child of one of its members merely because he did not participate in one demonstration. Even assuming that account was accurate, the IJ found that Patel's failure to flee India and his continued support of the BJP in Amhedabad for several years after it had killed his wife and child was not credible and undercut his argument that the BJP would harm him if he returned to India. For these reasons, the IJ determined that Patel had not established past persecution or a clear probability of future persecution that would justify withholding of removal. The IJ also denied Patel's request

for protection under the CAT because he could not satisfy the higher standard of proof required for relief under that provision.

Patel appealed to the Board of Immigration Appeals, which dismissed his appeal. The Board concluded that the IJ's denial of his application for asylum was not based on clearly erroneous facts. It also determined that the record supported the IJ's finding that Patel's testimony was not credible and thus he did not qualify for withholding of removal and protection under the CAT. The evidence the Board pointed to was Patel's inability to explain the discrepancy between his family members' deaths in January 1992 and the attack on the mosque in December 1992, the differing stories of his conduct after their deaths and the ways in which they were buried, and his remaining in India for five years after their deaths. Patel petitions for review of the Board's decision concerning his asylum application and request for withholding of removal.[1]

II.

We turn first to Patel's challenge to the Board's conclusion that he did not demonstrate he qualified for an exception to the one-year deadline for filing an asylum application. To apply for asylum, an alien must prove by clear and convincing evidence that his application was filed within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Late applications may be considered, however, "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application" within the one-year window. *Id.* § 1158(a)(2)(D).

Under 8 U.S.C. § 1158(a)(3), we do not have jurisdiction to review a determination that a late filing was not justified by changed or extraordinary circumstances. *Ishitiaq v. Holder*, 578 F.3d 712, 715–16 (7th Cir. 2009). So to the extent Patel asks us to review the Board's factual or discretionary conclusions, *id.* at 716, his petition must be dismissed for want of jurisdiction.

---

[1] In his petition for review, Patel does not challenge the Board's decision on his request for protection under the CAT. He has therefore waived judicial review of the issue. *Raghunathan v. Holder*, 604 F.3d 371, 381 (7th Cir. 2010).

Although judicial review of factual and discretionary determinations is statutorily removed, we do have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review "constitutional claims or questions of law." Such questions of law must be "pure" ones—i.e., "situations in which a case comes out one way if the Constitution or statute means one thing, and the other way if it means something different." *Viracacha v. Mukasey*, 518 F.3d 511, 515 (7th Cir. 2008). Apparently aware of the § 1158(a)(3) jurisdictional bar, Patel attempts to cast his arguments in the § 1252(a)(2)(D) mold. He claims that the IJ committed errors of law by failing to adequately articulate his reasons for concluding Patel did not qualify for an exception to the one-year deadline and by not questioning him regarding changed country conditions and a medical condition that supposedly accounted for his late filing. But Patel does not indicate which particular legal provisions he thinks these allegations traverse. Even assuming his arguments raise constitutional claims or pure questions of law, we are unable to address them because, as the Attorney General points out, Patel failed to exhaust his remedies by presenting them to the Board.[2] 8 U.S.C. § 1252(d)(1); *see Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006).

We now turn to Patel's challenge to the Board's denial of his withholding of removal claim, which we do have jurisdiction to review. *Zaidi v. Ashcroft*, 377 F.3d 678, 681 (7th Cir. 2004). To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), an alien is required to establish there exists a "clear probability"—i.e., it is more likely than not—he will be subjected to persecution in the proposed country of removal. *Benitez Ramos v. Holder*, 589 F.3d 426, 431 (7th Cir. 2009). Demonstration of past persecution in the country of removal creates a rebuttable presumption that an alien will face persecution if he returns. 8 C.F.R. § 208.16(b)(1)(i); *see also Zaidi*, 377 F.3d at 681.

Where, as here, the Board adopted and supplemented the IJ's decision, we review the IJ's decision as supplemented. *Raghunathan*, 604 F.3d at 379. We review a determination that an alien is ineligible for withholding of removal under the substantial evidence standard, which means that we must deny the petition for review if the decision is supported by reasonable, substantial, and probative evidence. *Kedjouti v. Holder*, 571 F.3d 718, 720 (7th Cir. 2009). We will not overturn the Board's decision unless the record compels a contrary result. *Id.* at 720–21. Credibility findings are subject to the same highly

---

[2] Patel did argue to the Board that the IJ had "wrongly concluded" that his medical condition did not satisfy the extraordinary circumstance exception. But that was a different argument than the one he makes now and, moreover, was based on a factual or discretionary determination rather than a constitutional claim or question of law.

deferential substantial evidence standard. *Mitondo v. Mukasey*, 523 F.3d 784, 788–89 (7th Cir. 2008). The parameters for an IJ's credibility determinations are set by 8 U.S.C. § 1158(b)(1)(B)(iii).

Substantial evidence in the record supports the Board's determination that Patel did not show he qualifies for withholding of removal because his testimony was not credible. He testified that he joined the BJP in December 1992 and that his wife and child were killed because he refused to participate in a march on a mosque that same month. Later in his testimony, however, he stated that his wife died before he joined the BJP. A few sentences later, he changed course again, acknowledging he was a member of the BJP when his wife was killed. And the death certificates Patel provided indicated that his wife and child died in January 1992, months before his refusal to join the march on the mosque—the very refusal which supposedly led to the killings. The death certificates also indicate they were issued by the public health department rather than a police department, as he had testified.

In addition, as the Board observed, Patel gave inconsistent testimony concerning whether he went to see his wife's body: he stated that he decided not to go when he learned BJP members were waiting to kill him, yet he also declared that he did go to see the body, at which point BJP members pushed him. The IJ also determined that if, as he testified, his wife and child were killed by the BJP and he feared for his own life, it was not credible that he would stay in India and maintain his BJP membership for several more years.

Because substantial evidence supports the decision that Patel's testimony was not credible and, therefore, that he had not shown past persecution in India or a clear probability of future persecution there, we deny his petition for review of the Board's denial of his request for withholding of removal.

III.

Because we lack jurisdiction to review the Board's conclusion that Patel did not qualify for an exception to the asylum application deadline, we dismiss that part of the petition for review. And because substantial evidence supports the Board's denial of his claim for withholding of removal, we deny the remainder of the petition. PETITION FOR REVIEW DISMISSED IN PART AND DENIED IN PART.