In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 08-2475, 08-3147

SASANKAN RAGHUNATHAN and
THAIYALNAYAKI THEVARAJAH,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of an Order of
the Board of Immigration Appeals.
Nos. A099-029-389, A099-029-391

ARGUED JANUARY 11, 2010—DECIDED APRIL 29, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE, *Circuit Judge*, and KENNELLY, *District Judge*.*

KANNE, *Circuit Judge*.  Petitioners Sasankan Raghuna-than and Thaiyalnayaki Thevarajah, husband and wife,

---

* The Honorable Matthew F. Kennelly, judge for the United States District Court for the Northern District of Illinois, sitting by designation.

are natives and citizens of Sri Lanka. In June 2007, they attempted to enter the United States using fraudulent Canadian passports. After discovery of their illegal entry attempt, the Department of Homeland Security issued the couple notices to appear, informing them that they were subject to removal under INA §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I), which regulate the removal of aliens who seek to procure admission to the United States by fraud or who fail to possess valid documentation at the time of admission, respectively.

Petitioners subsequently admitted the factual allegations contained in the notices to appear and conceded removability but also stated their intentions to apply for asylum, withholding of removal, and protections under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 23 I.L.M. 1027 (1984). Following a removal hearing, the immigration judge denied their applications, finding that Petitioners failed to meet their burden of proof for asylum, withholding of removal, and protections under CAT. The immigration judge also found Thevarajah ineligible for asylum and withholding of removal because she provided material support to a foreign terrorist organization, the Liberation Tigers of Tamil Eelam ("LTTE").

Petitioners appealed the immigration judge's order to the Board of Immigration Appeals, which affirmed the decision in May 2008. Petitioners subsequently filed a motion for reconsideration, which the Board denied in July 2008. Petitioners then filed petitions for review of

both decisions with this court, and we consolidated their petitions. We now deny their petitions for review.

## I. BACKGROUND

Raghunathan and Thevarajah are both Sri Lankan, and both of the Tamil ethnic group living in that country. According to their own testimony, both suffered years of persecution as a result of their Tamil ethnicity. Raghunathan testified before the immigration judge that his persecution began when he was sixteen years old and living with his family in Jaffna, Sri Lanka. He claimed that one morning, members of the Sri Lankan army arrested him on suspicion that he was supporting the LTTE, although no other members of his family were arrested. After his arrest, he claimed to have been detained in an army camp for three months, where he was interrogated, beaten, and burned.

Approximately one month after his release, Raghunathan said that he was arrested once more, but was detained only for a few hours. After this second arrest, he moved to the Sri Lankan capital where he lived for two years. In 1997, he left Sri Lanka for London. He applied for asylum in England, but was denied. Raghunathan remained in London for ten more years, when he then attempted to enter the United States using a fraudulent Canadian passport.

Thevarajah also claimed to have been persecuted as a result of her Tamil ethnicity. She testified before the immigration judge that for fourteen years she worked for

a Sri Lankan newspaper, Eelantham, which focused on the plight of Tamils. In her employ at the paper, Thevarajah worked in advertising, news collecting, and reporting. Significantly, she admitted during testimony her knowledge that the newspaper was produced by the LTTE, and was distributed only in Tamil-populated areas.

Thevarajah claimed that in 1998 she was detained by the army for a period of two weeks on suspicion of her membership in the LTTE. While detained, she was beaten and molested. After her release, Thevarajah stated that she wanted to quit her job but remained because she feared retaliation from the LTTE.

Thevarajah moved to the capital city in 2002. After a bombing in 2004, she testified that she was again arrested, this time for a week, during which she was beaten and questioned about the bombing. After her release, she traveled to London using fraudulent documents. While living in London, Thevarajah met Raghunathan, and the two married in 2005. In 2007, the couple left London together for the United States.

After their illegal entry attempt was discovered, Petitioners were granted a hearing before an immigration judge. At the hearing, the couple conceded removability, but sought asylum, withholding of removal, and protection under CAT. The immigration judge denied the petition, finding that the couple failed to produce any corroborative evidence of their persecution in Sri Lanka or of their applications for asylum in England. It also found that even if their stories were credible, neither

presented evidence that they were still of interest to the Sri Lankan government and would therefore suffer persecution upon their return. The immigration judge also found that Thevarajah was ineligible for asylum and withholding of removal under both the Immigration and Nationality Act ("INA") and CAT regulations because she provided material support to a terrorist organization. Because the Petitioners did not prove that it was more likely than not that they would be singled out for persecution if returned to Sri Lanka, the immigration judge denied their applications and ordered them removed.

On appeal of the removal order, the Board of Immigration Appeals adopted and affirmed the immigration judge's ruling. The Board agreed that Petitioners failed to produce corroborative evidence of their persecution in Sri Lanka and their applications for asylum in England. It also agreed that the material support bar applied to Thevarajah, barring her from asylum and withholding of removal. After the Board affirmed the removal order, Petitioners sought review.

Shortly after the Board affirmed the removal order, Petitioners filed a motion for reconsideration, in which they argued for the first time that Thevarajah's duties for the newspaper were protected by the First Amendment and international law, and therefore did not constitute material support to a terrorist organization. They also challenged the immigration judge's statement that the newspaper was "owned by" the LTTE, arguing that the paper was only a pro-LTTE publication. They claimed

that the Board failed to adequately consider their eligibility for asylum under a "pattern or practice" theory of persecution, and that the immigration judge's CAT analysis was in error.

The Board denied Petitioners' motion to reconsider, finding that the Petitioners could not identify any error in its decision to uphold the immigration judge's order in light of their failure to produce corroborative evidence after ordered to do so. It also found that the immigration judge did not mischaracterize the newspaper's affiliation, because the judge's statement was based on Thevarajah's own testimony. It finally concluded that it did not overlook any argument regarding the applicability of the material support bar because Thevarajah did not raise any meaningful argument until her motion for reconsideration. Petitioners requested review of that decision as well. We consolidated the petitions, and both are before us now.

## II. ANALYSIS

These petitions, although consolidated, represent two distinct decisions. Our traditional practice would have been to dismiss the motion for reconsideration and decide the petition from the removal order because, under our prior precedent, we lacked jurisdiction to review denials of motions to reconsider. *Johnson v. Mukasey*, 546 F.3d 403 (7th Cir. 2008). But while this case was pending, the Supreme Court decided *Kucana v. Holder*, 130 S. Ct. 827 (2010), where it held that federal courts have jurisdiction to review the Board's denial of a

motion to reconsider. To the extent that *Kucana* changes our analysis, it merely provides us with jurisdiction over an argument that we otherwise would have dismissed. And because the parties fully briefed the issue of how the outcome would be affected if the Court determined that we have jurisdiction, it makes no practical difference to our decision today; we will simply examine the denial of the motion to reconsider on its merits. With the jurisdictional issues resolved, we now turn to the merits of each petition.

### A. Motion for Reconsideration

We review a denial of a motion for reconsideration for abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 96 (1988); *Patel v. Gonzales*, 442 F.3d 1011, 1015-16 (7th Cir. 2006). The abuse of discretion standard is highly deferential, *Ali v. Ashcroft*, 395 F.3d 722, 731 (7th Cir. 2005), perhaps even more so in the immigration context than in other administrative contexts. *Abudu*, 485 U.S. at 110. Unless the Board's decision " 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,' " we will deny the petition for review. *Mungongo v. Gonzales*, 479 F.3d 531, 534 (7th Cir. 2007) (*quoting Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005)).

We review for substantial evidence factual findings made by the Board in the course of a motion for reconsideration. *See, e.g.*, *Huang v. Mukasey*, 525 F.3d 559, 564 (7th Cir. 2008); *Dandan v. Ashcroft*, 339 F.3d 567, 572 (7th

Cir. 2003); *see also Nehad v. Mukasey*, 535 F.3d 962, 966 (9th Cir. 2008). Under the substantial evidence standard, the agency's determination will stand if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Khan v. Filip*, 554 F.3d 681, 690 (7th Cir. 2009) (*quoting BinRashed v. Gonzales*, 502 F.3d 666, 670 (7th Cir. 2007)). In essence, administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Kedjouti v. Holder*, 571 F.3d 718, 720-21 (7th Cir. 2009).

### 1. Pattern or Practice

Petitioners claim that the Board erred in denying their pattern or practice claim. A pattern or practice claim starts with the presumption that an alien failed to establish that he was persecuted or is reasonably likely be singled out for persecution. Despite the absence of this evidence, an alien may prevail by establishing a pattern or practice of persecution in his native country based on a protected trait. 8 C.F.R. § 208.13(B)(2)(iii); *Krishnapillai v. Holder*, 563 F.3d 606, 620 (7th Cir. 2009). But the level of persecution must be extreme for an alien to prevail under this theory. *Krishnapillai*, 563 F.3d at 620. The threshold for establishing a practice or pattern is high because a successful showing means that, in theory, every other person belonging to that same protected group would be entitled to asylum in the United States. *Id.* We therefore require evidence of a "systematic, pervasive, or organized effort to kill, imprison, or severely

injure members of the protected group . . . ." *Id. (quoting Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005)).

Petitioners have failed to meet the high standard required to succeed on a pattern or practice claim, especially under an abuse of discretion standard of review. Our decision in *Krishnapillai* virtually extinguishes any chance of success for Petitioners' pattern or practice argument. In that case, an alien claimed that he could not return to Sri Lanka because of fighting between the government and the LTTE. As evidence of his claim of persecution, he offered a December 2006 United Nations Office of the High Commissioner for Refugees report, which recommended that no Tamil be returned to Sri Lanka until security conditions improved in that country. We closely analyzed that report, but reached the ultimate conclusion that although life is difficult for Tamils in Sri Lanka, the evidence did not "reflect the extreme degree of mistreatment necessary to establish a pattern or practice of persecution." 563 F.3d at 620. That decision applies with equal force to Petitioners' claim in this case.

Furthermore, despite the fact that both Petitioners have family who remain in Sri Lanka, they presented no corroborative evidence from similarly situated family members showing that as Tamils, they are subject to persecution. If their family members are not suffering persecution as Tamils, then it is unlikely Petitioners will suffer persecution merely because of their Tamil ethnicity. *See, e.g.*, *Guardia v. Mukasey*, 526 F.3d 968, 972 (7th Cir. 2008) ("Evidence that an applicant's family

members remain unharmed in their home country may support a finding that the applicant is unlikely to suffer future persecution." (*citing Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000))). We find that the Board did not abuse its discretion in reaching the conclusion that Petitioners could not establish a pattern or practice theory.

### 2. *Thevarajah's Withholding of Removal*

In denying Thevarajah's withholding of removal, the immigration judge explained that "general danger and violence in an alien's country is insufficient to establish eligibility for relief, unless the alien can establish special circumstances that go beyond the general danger affecting everyone." (App. at 123.) Although Petitioners argue that this comment evidenced the immigration judge's error in failing to distinguish between incidents of civil war and persecution in the context of civil war, even if true, this argument is irrelevant. The Board did not abuse its discretion in denying Petitioners' motion to reconsider based on the immigration judge's comment because the immigration judge correctly stated the law. We have stated that generalized conditions affecting large segments of a population do not, by themselves, prove that an individual faces persecution. *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004). Unless an alien can produce evidence that he or she is likely to be singled out for persecution, a generalized condition has no significance. *See id.* It was Thevarajah's burden to produce this evidence. Because she failed to do so, the distinction between incidents of civil war and persecution

in the context of civil war matters little. Thevarajah failed to make the particularized showing necessary to differentiate her circumstances from those facing all Tamils, so the Board was within its discretion in denying reconsideration of this issue.

### 3. *Material Support Bar*

Thevarajah also argues that the Board erred in denying the motion to reconsider her argument that the material support bar was inapplicable to her situation. Yet the reason the Board denied reconsideration of this issue was because it found that Thevarajah failed to argue it adequately in her initial appeal. In fact, in her appeal to the Board, Thevarajah's challenge to the immigration judge's ruling consisted only of the statement: "The female respondent claims that she worked as a journalist for a newspaper which is under the control of the LTTE. Her argument is that working as a journalist does not amount to material support." (App. at 59.) But stating blankly what one's argument *is* and actually *arguing* a position are different things. "Perfunctory and undeveloped arguments are waived, especially when . . . 'a party fails to develop the factual basis of a claim on appeal and, instead, merely draws and relies upon bare conclusions.'" *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002) (*quoting Spath v. Hayes Wheels Int'l-Ind. Inc.*, 211 F.3d 392, 397 (7th Cir. 2000)). The Board utilized this exact reasoning when it explained that it was denying Thevarajah's appeal because her argument was "vague and unsupported." (App. at 42.)

Now, however, Thevarajah does not challenge this denial, but instead challenges the rejection of the new argument she made in her motion to reconsider. There, Thevarajah argued that the material support bar did not apply to her because she was protected by the First Amendment and international law. And although this may very well be true, the Board found that Thevarajah's failure to articulate this argument on appeal of the immigration judge's order was fatal. We have held that the Board is not required to grant a motion for reconsideration to address issues that could have been raised earlier. *Ahmed v. Ashcroft*, 388 F.3d 247, 251 (7th Cir. 2004). Because Thevarajah's new argument was raised for the first time in a motion for reconsideration, the Board did not abuse its discretion in declining to hear Thevarajah's material support argument. Therefore, the Board's decision to deny Thevarajah's motion for reconsideration was proper.

In sum, the Board did not abuse its discretion by rejecting Petitioners' motion to reconsider. We deny the petition for review of Petitioners' reconsideration motion and we now turn to the Board's affirmance of the immigration judge's order removing Petitioners from the United States.

B.  *Petition for Review of Board's Decision Affirming the Immigration Judge*

The second petition before us arises from the Board's affirmance of the immigration judge's order denying Petitioners asylum, withholding of removal, and protec-

tion under CAT. The Board found that the immigration judge did not commit error when he determined that Petitioners' failure to produce or adequately explain the absence of corroborating evidence was fatal to their claims. Petitioners now argue that the Board's decision was in error.

When the Board's order supplements an immigration judge's decision, the immigration judge's opinion "as supplemented by the [Board's] opinion becomes the basis for review." *Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004). The standard for our review of that supplemented decision comes from the REAL ID Act, Pub. L. No. 109-13, § 101, 119 Stat. 231, 302 (2005), which was enacted, in part, to prevent terrorists from obtaining relief from removal. The REAL ID Act provides that when reviewing an immigration judge's decision, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Id*. § 101, 119 Stat. at 304 (amending 8 U.S.C. § 1252). Therefore, we review the immigration judge's determination, as supplemented by the Board, under the substantial evidence standard. *See Krishnapillai*, 563 F.3d at 609; *Liu*, 380 F.3d at 311.

Petitioners argue that the Board erred when it affirmed the immigration judge's decision holding that Petitioners were required and failed to produce or adequately explain the absence of evidence corroborating their claims. Yet Petitioners point to no evidence that compels

a contrary conclusion. Under the REAL ID Act, an immigration judge exercises "substantial leeway to demand corroboration of an asylum applicant's allegations whether or not the judge finds the applicant credible." *Krishnapillai*, 563 F.3d at 618. In fact, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). In essence, when an immigration judge requires an applicant to produce corroborating evidence, that evidence is required (unless it cannot be reasonably obtained), even if the judge finds the applicant credible. *Krishnapillai*, 563 F.3d at 618. Therefore, the immigration judge was well within his discretion when he required Petitioners to corroborate their claims. Unless Petitioners can show that corroborating evidence was reasonably unavailable, their failure to produce it was fatal to their claims.

Petitioners therefore argue that corroborating evidence was unavailable and that both the immigration judge and the Board improperly made a determination to the contrary. We first address Petitioners' argument that documentation regarding their asylum applications in England was unavailable. The government argues that this argument is waived because Petitioners failed to raise it in their appeal to the Board. *Mekhtiev v. Holder*, 559 F.3d 725, 729 (7th Cir. 2009) (explaining how waiver may occur with any argument not exhausted through administrative remedies). We agree with the government that, before the Board, Petitioners failed to raise the

argument that documentation supporting their asylum applications was unavailable. (*See* App. at 50-52.) Petitioners therefore waived this argument.

With regard to Petitioners' claim that the Board erred in finding that the documents they submitted did not satisfy the corroboration requirement, the evidence is to the contrary. Petitioners only submitted two things: (1) an order from a British court sustaining a lower court's finding that Raghunathan "would be of no further interest to the [LTTE] or the Sri Lankan authorities," and (2) a cover sheet to the court's order affirming the denial of Thevarajah's asylum application. (App. at 366, 368.) These two documents were unresponsive to the immigration judge's request that Petitioners produce the British asylum petitions or British court decisions denying them, or provide an explanation for their inability to do so.

Furthermore, the explanation that Petitioners offered suffers from the same infirmity: Raghunathan's claim that his British attorney failed to send him application materials and was eventually disbarred is not supported by the record. And in any event, this explanation does not resolve why Raghunathan himself could not obtain the documents, even if his attorney did not assist him. Thevarajah, on her part, offered no explanation at all, so her argument is waived. *See Mekhtiev*, 559 F.3d at 729. Petitioners' argument that they offered a sufficient explanation for their inability to produce corroboration regarding their asylum applications is without merit.

Next, Raghunathan claims that the judge erred in requiring him to show his history of medical treatment,

which he received to remedy the abuse suffered at the hands of the Sri Lankan army. Raghunathan's explanation for his failure to provide this information is his assertion that it was never established that he received medical treatment for his injuries. But this contradicts his testimony before the immigration judge in which he said that he was treated at a hospital. (App. at 272.) Therefore, the Board did not err in affirming the immigration judge's determination that Raghunathan failed to offer a reasonable explanation for the lack of evidence corroborating his medical treatment.

Raghunathan also claims that the immigration judge excluded a letter purportedly sent by Raghunathan's mother in which she recounted events that happened in Sri Lanka. But the evidence shows that the immigration judge did not exclude the evidence. Instead, the judge determined that it deserved very little weight because Raghunathan did not authenticate the letter, detail how it was obtained by his sister in Canada, or explain why Raghunathan—who had very little recent contact with his mother—suddenly had a letter from her supporting his version of events. In any event, the letter did not independently corroborate Raghunathan's claim because his mother did not witness the events in question, but merely retold Raghunathan's version of events. We agree that under these circumstances, the Board did not err in affirming the immigration judge's decision that the letter was insufficient corroboration.

Finally, Petitioners argue that the immigration judge did not make the requisite findings necessary to deny

their applications based on a lack of corroboration. But Petitioners' argument is premised on superceded pre-REAL ID Act authority, which has no application to this case. *See, e.g.*, *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008) ("[U]nder the REAL ID Act, corroborating evidence may be required even if the applicant is credible. By codifying the corroboration rule, Congress removed any doubt as to the validity of that rule. Thus, the . . . three-part test, established for purposes of assessing the validity of the INS's debatable interpretation of the corroboration rule, no longer controls."). As discussed, if an immigration judge requests corroboration, that request ends the inquiry when Petitioners fail to produce that evidence or explain its absence, *Krishnapillai*, 563 F.3d at 618, as they did here.

Because Petitioners do not claim that the Board was incorrect in its holding that Petitioners failed to meet their burden of production under the CAT regulations, that argument is waived. *Corcoran v. Levenhagen*, 593 F.3d 547, 551 (7th Cir. 2010). This disposes of all of Petitioners' arguments.

### III. CONCLUSION

Because Petitioners have failed to show that the Board abused its discretion in denying Petitioners' motion for reconsideration or that the Board erred in affirming the immigration judge's decision ordering removal of Petitioners, the petitions for review are DENIED.