NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 20, 2011
Decided June 6, 2011

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

G. PATRICK MURPHY, *District Judge*[*]

No. 10-2504

| | |
|---|---|
| TATSIANA BOIKA and SERGEY ZHITS, *Petitioners,* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | Nos.   A088-223-087 |
| | A088-223-088 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent.* | |

## O R D E R

Petitioner Tatsiana Boika sought asylum and withholding of removal based on a fear of persecution upon her return to Belarus. Boika's husband, co-petitioner Sergey Zhits, joined Boika's asylum petition as a derivative applicant. An immigration judge denied relief based on an adverse credibility determination, and the Board of Immigration Appeals affirmed. Boika and Zhits petitioned this court for review. Because the immigration

---

[*]The Honorable G. Patrick Murphy of the Southern District of Illinois, sitting by designation.

judge's decision, as supplemented by the Board, is supported by substantial evidence and does not suffer from legal error, we deny the petition.

*Background*

Boika was admitted to the United States on May 26, 2006, as a non-immigrant exchange visitor with authorization to remain in the United States until September 1, 2006. She stayed beyond that date, however, and in October 2006, married Zhits, who was also living in the United States with an expired non-immigrant visa. Both Boika and Zhits are citizens of Belarus.

On May 2, 2007, Boika filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. Boika asserted that she is at risk of harm from the Belarusian government for her participation in a group opposed to the government.

The U.S. Department of Homeland Security initiated proceedings against her in June 2007, charging her with removability under 8 U.S.C. § 1227(a)(1)(B).[1] An immigration judge held two evidentiary hearings in which Boika was the sole witness. In a thorough opinion containing a detailed recitation of Boika's testimony, the judge denied Boika's application, finding her testimony not credible.

Boika appealed to the Board of Immigration Appeals. She argued that the immigration judge misconstrued her testimony. She further claimed that the judge was biased, failed to conduct a proper hearing, relied upon irrelevant considerations, and violated her due process rights. The Board dismissed Boika's petition, concluding that the judge's detailed adverse credibility determination was not clearly erroneous and that the record did not support Boika's other contentions. Boika seeks review in this court.

---

[1]The statute provides that any alien present in the United States is deportable if her visa or other documentation authorizing admission into the United States as a non-immigrant has been revoked, or if she is in the United States in violation of any U.S. law. See 8 U.S.C. § 1227(a)(1)(B).

*Discussion*

We review the immigration judge's decision as supplemented by the Board's analysis. See *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010). We assess whether the judge's determination was based on reasonable, substantial, and probative evidence in the record considered as a whole, and we will grant the petition only if the evidence compels a contrary conclusion. See *Surganova v. Holder*, 612 F.3d 901, 903-04 (7th Cir. 2010), quoting *Sina v. Gonzales*, 476 F.3d 459, 461 (7th Cir. 2007). It does not in this case.

I.      *Asylum and Withholding of Removal*

To establish eligibility for asylum, Boika must prove that she is a "refugee" within the meaning of the Immigration and Nationality Act. As a derivative applicant under 8 U.S.C. § 1158(b)(3)(A), Zhits can be granted relief only if Boika's application is granted. Thus, we review only the circumstances upon which Boika bases her claim.

Boika must show that she is unable or unwilling to return to her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If an applicant establishes that she suffered past persecution, she is entitled to a rebuttable presumption of having a well-founded fear of persecution on the same ground if she is removed. See 8 C.F.R. § 1208.13(b)(1).

To support withholding of removal, Boika must demonstrate a "clear probability" that she will face persecution in Belarus. See *Rapheal v. Mukasey*, 533 F.3d 521, 525 (7th Cir. 2008), quoting *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005). The clear probability standard requires her to show that she is "more likely than not" to be subject to persecution if returned to her native country – a higher standard than that required to establish eligibility for asylum. *Id.*

An applicant may establish that she qualifies as a refugee based on only her own testimony if the judge finds it to be credible. See 8 U.S.C. § 1158(b)(1)(B)(ii). Because an applicant's credibility is paramount in asylum proceedings, though, an adverse credibility finding will likely doom the applicant's claimed eligibility. See *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009). Even if an immigration judge finds an applicant to be credible, corroborating evidence may be required under the REAL ID Act of 2005, Pub. L. No. 109-13. *Rapheal*, 533 F.3d at 527 (7th Cir. 2008), citing 8 U.S.C. § 1158(b)(1)(B)(ii). The REAL ID Act provides: "Where the trier of fact determines that the applicant should provide

evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). Here, the judge based her decision on inconsistencies in Boika's testimony and a lack of corroborative evidence to support her account. We take up each determination in turn.

A. *Lack of Credibility*

The Immigration and Nationality Act as amended by the REAL ID Act instructs an immigration judge to consider "the totality of the circumstances, and all relevant factors" in evaluating the credibility of an applicant. 8 U.S.C. § 1158(b)(1)(B)(iii). Our review of the judge's determination is deferential. See *Hassan*, 571 F.3d at 636-37. We disturb a credibility assessment only in extraordinary circumstances, such as where the judge's conclusions lack specific, cogent reasons or are based on incomplete or insufficient evidence. See *Musollari v. Mukasey*, 545 F.3d 505, 508 (7th Cir. 2008), quoting *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006).

The immigration judge concluded that Boika's testimony was "riddled with inconsistencies," the most significant of which was a discrepancy between Boika's testimony and the documentary evidence regarding which university she attended. Throughout her testimony and in her application, Boika claimed that she attended Minsk State Linguistic University. She testified that she became involved in a political organization at the university known as Maladaya Hramada. In Boika's words, Maladaya Hramada opposed the policies of the Belarusian government and tried "to inform people about the situation in the country." Boika testified that she was an active member of the group, creating, editing, and distributing political leaflets.

Boika stated that in August 2005, she was detained by police officers and beaten while in detention for participating in a scheme to print and distribute Maladaya Hramada leaflets. In March 2006, she was arrested while participating in a protest in Minsk and served twenty-three days in jail. Upon her return to Minsk State following her release, Boika learned she had been expelled. She left Minsk to live with her parents in Brest, nearly 400 kilometers away, though she continued to be engaged in political activities. She was again detained and interrogated in April 2006. With charges still pending against her, Boika left Belarus the following month for the United States, where she had traveled in 2004.

The judge did not find Boika's testimony credible. Almost all of Boika's account of her past persecution took place in connection with her studies at Minsk State Linguistic University and her political activities there, leading the judge to conclude that her attendance at Minsk State was "at the very heart of her claim." But Boika's 2004 and 2006 U.S. visa applications both stated that she attended Brest State University. In the comments section of her 2006 visa application, a consular officer wrote, "4th year brest state" and "govt pays for education."

The judge gave Boika ample opportunity to explain the discrepancy in universities and found that Boika was unable to provide a plausible explanation. Most troubling to the judge was Boika's inconsistent testimony regarding the process through which she obtained her visas. Boika first testified that she had personally completed the visa applications and that the information they contained was correct. Later she claimed that a travel agency had completed the visa applications on her behalf and that any errors were carried over through no fault of her own. The judge rejected the possibility that the name of the university listed on her visa applications was a mistake made by a staff person at the travel agency or by a consular officer. The judge also noted that Boika signed both applications, attesting to their truthfulness.

We see no ground on which to upset the judge's credibility determination. An immigration judge may properly base a credibility determination on the consistency between the applicant's written and oral statements and the internal consistency of each. 8 U.S.C. § 1158(b)(1)(B)(iii). Unexplained material inconsistencies are a sufficient basis for a judge to find an applicant not credible. See *Aung v. Gonzales*, 495 F.3d 742, 746 (7th Cir. 2007) (upholding judge's adverse credibility determination where petitioner was unable to explain inconsistencies and substantial evidence supported the determination). The judge was not compelled to accept the explanation that the consular officer must have misheard or copied the name from another document that an intermediary had prepared. Boika acknowledged that she had reviewed both applications before signing them, and upon signing them, she was swearing to the truthfulness of their contents. Moreover, her claim that an agent prepared her visa materials surfaced for the first time during her testimony. Contrary to Boika's contention on appeal, when asked during the evidentiary hearing whether she filled out her visa application in 2006, she replied affirmatively. We find no error in the judge's conclusion that Boika failed to offer an adequate explanation regarding this inconsistency, which was central to her entire application.

The judge's adverse credibility determination rested on other inconsistencies, as well. Boika testified that she could not locate her friend, Larisa Fomina, who was jailed

with her in August 2005, and that she did not know anything about what happened to her after Boika left Belarus. The record contains a letter from Larisa Fomina addressed to Boika at her former address in Illinois. The judge concluded that this document "raises more questions about the central elements of [Boika's] claim." Boika also testified that when she came to the United States in 2006, she passed through Paris. A copy of Boika's passport in the record indicated that Boika in fact passed through Warsaw, Poland, on May 26, 2006, the day she was admitted to the United States. The judge was further troubled by a strange motion filed by an attorney acting on Boika's behalf indicating that the co-petitioners were divorced and requesting a change of venue. The judge found that Boika never satisfactorily explained the motion, which was later repudiated by Boika's and Zhits's new attorney.[2]

The changes made by the REAL ID Act permit a judge to consider "inaccuracies or falsehoods that do not go to the heart of the asylum applicant's claim, . . . as part of his consideration of the 'totality of the circumstances, and all relevant factors.'" *Kadia v. Gonzales*, 501 F.3d 817, 822 (7th Cir. 2007). Here, the judge had a substantial basis for doubting Boika's credibility. At no time did Boika adequately explain the inconsistencies in her application. The immigration judge acted well within her discretion in concluding from these disparities, as well as from her evaluation of Boika's demeanor at the hearings, that Boika was not credible. We see no basis for rejecting the judge's assessment.

### B. *Lack of Corroboration*

The immigration judge held a second hearing at which Boika had a further opportunity to provide corroborating evidence that she attended Minsk State Linguistic University. Boika failed to provide any corroboration. She testified that her parents were unsuccessful in obtaining records from the university. According to Boika, a letter in which her mother explained these circumstances had not arrived in time for the second hearing. The judge did not find Boika's explanation to be reasonable. She concluded that Boika

---

[2]The government and the petitioners agree that one inconsistency cited by the judge was not supported by the record. The judge found that Boika first testified that she paid her own tuition when she lost her university scholarship but then later testified that her parents paid. Read in context, however, Boika's testimony was consistent throughout, stating that she and her family paid. Nevertheless, in light of the record in its entirety, one area of consistency amid this "multitude" of inconsistencies identified by the judge would not have altered the final determination.

should have been able to provide some corroboration of her claim that she attended Minsk State.

The REAL ID Act requires that an applicant provide corroborating evidence when ordered by the trier of fact, unless the applicant does not have and cannot reasonably obtain the evidence. See 8 U.S.C. § 1158(b)(1)(B)(ii). An immigration judge has "substantial leeway to demand corroboration of an asylum applicant's allegations whether or not the judge finds the applicant credible." *Raghunathan*, 604 F.3d at 379, quoting *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009). We find no error in the judge's expectation that Boika should have been able to produce additional evidence to corroborate her account. Boika provided no documentation during the initial proceedings or in her application to confirm that she attended Minsk State. Under these circumstances, and given that the burden of proof was on Boika, it was reasonable for the judge to expect her to submit some other documentation to substantiate her enrollment.

Boika faces a stringent standard of review for the judge's conclusion regarding the availability of corroborating evidence. We do not reverse such a determination unless we find that a reasonable trier of fact would be compelled to conclude that such evidence is unavailable. See 8 U.S.C. § 1252(b)(4). The record here does not compel that conclusion. Boika provided nothing to support her assertion that her parents were unable to obtain university records, nor did she attempt to provide any substitute documentation. The judge did not err by concluding that Boika needed to provide more than bare assertions that corroboration was not available.

II. *Due Process*

Boika also challenges the Board's determination that she was afforded a full and fair hearing. Due process requires that an asylum applicant "be afforded a meaningful opportunity to present a claim." *Lin v. Holder*, 630 F.3d 536, 544 (7th Cir. 2010); see also *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (recognizing that an alien is guaranteed "notice and an opportunity for a fair hearing" by statute and regulation). We analyze whether, in light of the totality of the circumstances, Boika had a full and fair opportunity to put on her case. See *Barradas v. Holder*, 582 F.3d 754, 767 (7th Cir. 2009). We conclude that she did.

Boika submits that the immigration judge erred by taking official notice of a report from the U.S. Government Accountability Office. The report described an increase in fraudulent petitions from Russian, Belarusian, Armenian, and Ukrainian J-1 (non-

immigrant cultural exchange) visa holders claiming to have suffered persecution. Boika maintains first that the report is contradicted by the country conditions report from the U.S. Department of State already in the record that discussed an increase in persecution by the Belarusian government against members of the political opposition, especially students. Second, she contends that the judge should have allowed her an opportunity to respond to the content of the GAO report. Finally, Boika argues that the judge inappropriately relied on the judge's own beliefs, speculation, and conjecture in deciding whether Boika was credible.

Boika relies on our conclusion in *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir. 1991), that "the due process clause of the fifth amendment requires that petitioners be allowed an opportunity to rebut officially noticed facts, particularly when, as in this case, those facts are crucial to – indeed dispositive of – the outcome of the administrative proceeding." In response, the government argues that if the immigration judge's notice of the GAO report was error, the error was harmless at best. We agree with the government that the judge's reference to the GAO report is not a sufficient justification for reversing her decision, which had a much broader foundation.

To prevail on a due process claim, an applicant must show prejudice, *Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000), which requires that a due process violation probably affected the results of the proceedings. See *Capric v. Ashcroft*, 355 F.3d 1075, 1087-88 (7th Cir. 2004), citing *Rusu v. INS*, 296 F.3d 316, 320-21 (4th Cir. 2002). Reading the immigration judge's decision as a whole, it is clear that the GAO report was not decisive, so we find no prejudice here even if there was an error. The judge relied on the GAO report primarily for its uncontroversial explanation that J-1 visa holders are "students in good standing" at their universities – a phrase the judge emphasized in her opinion. From this uncontroversial premise, the judge reasoned it was implausible that Boika could have received two J-1 visas without documenting her good standing at her university, which was listed on her applications as Brest State. It was reasonable to conclude that Boika would have needed to provide consular officials with university records demonstrating her good standing to obtain the visa. Moreover, the judge was clear that she reached her credibility and corroboration determinations independent of the GAO report.

As for Boika's claim that the judge was biased and relied on speculation, we cannot agree. First, Boika makes no credible claim regarding bias on the part of the judge. She does not identify any passage in the decision or the administrative transcript that suggests bias, nor do we find any indication of bias upon our review. Second, the judge's detailed opinion substantiates each of her conclusions with references to the record. The adverse

credibility determination is not "rife" with personal beliefs and conjectures as Boika claims. We agree with the Board that Boika has failed to show that she was deprived of her right to due process of law.

*Conclusion*

Boika's credibility was key to the success of her petition. In the absence of compelling evidence that the judge erred in her adverse credibility determination, Boika's asylum claim fails, and with it her husband's claim. Because a claim for withholding of removal is subject to a higher burden of proof, it follows that Boika's request for that relief fails as well. Accordingly, we DENY the petition for review.