NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted February 22, 2012[*]
Decided February 22, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-2090

| | |
|---|---|
| SATISH B. PATEL, <br> *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A099-032-194 |
| ERIC H. HOLDER, JR., <br> Attorney General of the United States, <br> *Respondent*. | |

**O R D E R**

Satish Patel, a native and citizen of India, petitions for review of an order of the Board of Immigration Appeals upholding an immigration judge's denial of his requests for withholding of removal and relief under the United Nations Convention Against Torture (CAT). Because the Board's decision is supported by substantial evidence, we deny the petition.

---

[*] The parties have waived oral argument in this case, and thus the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2)(C).

Patel entered the United States with his aunt and uncle in 1999 at age 17. It is unclear whether he had permission to enter the country initially, but he was here unlawfully when immigration officials discovered him in Chicago in 2007 and began removal proceedings against him. Patel then applied for asylum, withholding of removal, and CAT relief, explaining in his application that his family in India has disowned him, and one of his uncles has threatened to report him to the police because he is homosexual.

In an effort to substantiate more widespread problems for homosexuals, Patel submitted the country reports for 2007 and 2008 from the U.S. Department of State and one from the United Kingdom Border Agency. Those reports explain that homosexuals in India are victims of discrimination in work and education and suffer attacks, rapes, and blackmail. The reports add that Indian police sometimes commit violence against homosexuals, including sexual assault and electroshock therapy. Furthermore, to prevent some victims from reporting those incidents, the police have threatened to arrest them under Section 377 of the Indian Penal Code, a colonial-era law that codifies lengthy incarceration for the "unnatural offences" of sodomy. The reports do not specify the frequency or location of the private or police abuse of homosexuals. They do, however, observe that actual arrests under Section 377 are rare and that the Indian government's stated policy is to tolerate homosexuality practiced in private.

At a hearing on his application, Patel testified about his fear of persecution based on his homosexuality if returned to India. His testimony focused entirely on his personal experiences. As a youth, he endured beatings and ridicule from schoolmates in India who discovered his sexual orientation, and his family mistreated him after finding out: His parents briefly kicked him out of the house, and his uncle slapped him. He admitted, though, that Indian government officials never harmed him because of his sexual orientation, but he nonetheless feared arrest if he returned because, he believes, the Indian government does not tolerate homosexuals.

The IJ denied Patel's requests for relief. First, the IJ denied asylum because Patel missed the one-year filing deadline, *see* 8 U.S.C. § 1158(a)(2)(B), and his circumstances did not fall under any exception to that rule. (Patel does not challenge this ruling on appeal, so we discuss it no further.) Second, the IJ denied withholding of removal, finding no clear probability that Patel will be persecuted in India. Patel did not endure past persecution, the IJ decided, because the abuse from his family and schoolmates fell short of that standard and he has never been harassed by the police. The IJ acknowledged that Indian society is intolerant toward homosexuals but concluded that Patel's fear of arrest is unfounded because Indian prosecutors use Section 377, the law banning "unnatural offences," primarily to punish child abuse or rape and that "Indian higher courts have heard only 30

cases relating to Section 377 between 1860 and 1992." The IJ also denied CAT relief, concluding that Patel failed to show that he is likely to be tortured in India.

Patel appealed to the Board, which upheld the IJ's decision. The Board agreed that Patel failed to show that he would be singled out for persecution in India because of his homosexuality. The Board also rejected Patel's argument that India has a "pattern or practice" of persecuting homosexuals. The Board recognized that "homophobia is a problem in India" and police sometimes use Section 377 "to harass and blackmail homosexuals." But homosexuals are rarely arrested under Section 377, the Board emphasized, and the record lacks evidence of widespread police abuse. The Board also upheld the denial of asylum and CAT protection.

In his petition for review, Patel argues solely that he is entitled to withholding of removal and CAT relief because India has a "pattern and practice" of persecuting homosexuals, *see* 8 C.F.R. § 1208.16(b)(2)(I), as reflected in reports of societal discrimination and police harassment, and the existence of Section 377. He abandons his arguments that he suffered past persecution (based on family shunning and schoolyard abuse) and that the government will single him out individually for future persecution.

To be entitled to withholding of removal, Patel must show that it is more likely than not that he would be persecuted in India. *See INS v. Stevic*, 467 U.S. 407, 423–24 (1984); *Stanojkova v. Holder*, 645 F.3d 943, 946 (7th Cir. 2011); *Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010). To meet that standard using evidence of a pattern or practice of persecution, Patel must show that state actors in India perpetrated or tolerated "'a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group.'" *See Krishnapillai v. Holder*, 563 F.3d 606, 620 (7th Cir. 2009) (quoting *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005)). We will uphold the Board's decision if it is supported by substantial evidence and will reverse only if the evidence compels a different result. *See Toure*, 624 F.3d at 427.

The record here does not compel overturning the Board's order because the record lacks evidence of widespread police abuse or government-sanctioned intolerance of homosexuals. Patel's strongest evidence of police abuse comes from the country reports stating that police sometimes harm gay men and threaten their arrest under Section 377 to silence them. But the record reveals scant information about the prevalence of these acts; we know neither how often nor where in India they occur. To the contrary, we know from these reports that the Indian government has proclaimed tolerance of private homosexual conduct and that police arrests under Section 377 are rare. Moreover, according to an article quoted in one of the reports, "many Indian homosexuals worry more about exposure to their families and colleagues than about the law." The record thus fails to compel a

conclusion that government action against homosexuals is "systematic, pervasive, or organized." *See Pathmakanthan v. Holder*, 612 F.3d 618, 624–25 (7th Cir. 2010)*; Krishnapillai*, 563 F.3d at 620. This evidentiary failure, combined with the evidence of official tolerance, dooms Patel's case because otherwise, "in theory, every other person belonging to [Patel's group] would be entitled to asylum in the United States." *Raghunathan v. Holder*, 604 F.3d 371, 377 (7th Cir. 2010). As for Patel's argument that he will be persecuted because Indian society does not tolerate homosexuals, he has likewise failed to adduce compelling evidence. The record does not show the frequency or breadth of private attacks, or whether the Indian government has been made aware of but refused to address them. Private acts without state acquiescence, let alone knowledge, is not persecution. *See Sarhan v. Holder*, 658 F.3d 649, 657 (7th Cir. 2011); *Borovsky v. Holder*, 612 F.3d 917, 922 (7th Cir. 2010).[1]

For these same reasons, Patel also failed to show that he is entitled to CAT relief, which requires that it be more likely than not that he face torture—not just persecution—if removed to India. *See* 8 C.F.R. § 1208.16(c)(2); *Toure*, 624 F.3d at 429.

The petition for review is DENIED.

---

[1]A recent legal development in the public record further supports the Board's decision: In July 2009 the High Court of Delhi ruled that Section 377 is unconstitutional as applied to consensual sex between adult homosexuals, though review of that decision is still pending in the Supreme Court of India. *See Naz Found. v. Gov't of NCT of Delhi*, No. 7455/2001 (Delhi High Ct. 2009), *available at* http://lobis.nic.in/dhc/APS/judgement/02-07-2009/APS02072009CW74552001.pdf; *SC defers hearing on decriminalisation of gay sex*, STATESMAN, Nov. 8, 2011, 2011 WLNR 23089361.