NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2015
Decided August 13, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1268

| | |
|---|---|
| YONGGE YANG,<br>      *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A200-997-341 |
| LORETTA E. LYNCH,<br>Attorney General of the United States,<br>      *Respondent*. | |

**O R D E R**

Yongge Yang, a 45-year-old Chinese citizen, petitions for review of an order of the Board of Immigration Appeals upholding the denial of his application for asylum. Yang challenges the agency's conclusion that his testimony and corroborating evidence were insufficient to establish that he had been persecuted in the past or that he had a well-founded fear of future persecution on account of his political opinion. Because substantial evidence supports the decision to require corroborating evidence that was reasonably available, we deny the petition.

Yang entered the United States in late 2010 on a six-month visitor's visa. Two months after his visa expired, he affirmatively applied for asylum, withholding of removal, and relief under the Convention Against Torture, asserting persecution based

on political opinion. The Department of Homeland Security referred his application to an immigration judge and charged him with removability for overstaying his visa. *See* 8 U.S.C. § 1227(a)(1)(B). Yang conceded removability and renewed his requests for asylum and related relief.

At his final hearing before the IJ, Yang testified that his resistance to the government's land-acquisition policy in the southwestern city of Chengdu had led to a severe beating by Chinese police officers. The government had offered to compensate Yang for demolishing his apartment (to make room for a new subway route), but Yang demanded twice the proposed amount. Then, for "fighting against the government," three police officers took him to a station and interrogated him, kicked him, punched him in the stomach, struck him in the head with a baton, threatened to kill him, and finally forced him to sign the paperwork. He later was released and taken by his wife and mother to a hospital, where he was diagnosed with a mild concussion. Yang said that this incident caused him to lose his job at a private construction company, which "did not dare" employ someone who had "fought against the government." Eventually the home was demolished, Yang collected the money that had been offered, and he and his wife moved in with her parents. Three months later he filed a complaint with local officials, and a police officer threatened to kill him if he did not stop "making trouble with the government." Yang feared for his life, so he paid a snakehead 100,000 yuan to help him escape China. Yang said that he speaks on the phone with his parents and wife, and his parents told him that police officers still look for him at their house two or three times a week.

Yang's supporting evidence included medical records reflecting a beating and concussion around the time in question and a couple of news articles as well as excerpts from a U.S. Department of State Human Rights Report on China discussing the forced relocation of Chinese citizens due to urban development.

The IJ denied relief. Yang's testimony and sparse documentary evidence, the IJ concluded, failed to establish that he had suffered past persecution or that he had a well-founded fear of future persecution on account of his political opinion. The IJ noted that Yang, unlike others whom the State Department's report acknowledges may have been prosecuted, had not been a protest leader. The IJ also found it "troubling" that Yang spent 100,000 yuan to be smuggled out of China even though he "was not threatened at the time of his departure" and "his family appeared to be living well and intact at his wife's family home." Additionally, the IJ acknowledged that Yang's resistance to the government might have "a political component or dimension" but noted that he had not "fully developed that issue." The IJ further faulted Yang for not meeting his evidentiary burden under the REAL ID Act by submitting, for example,

affidavits from family members or "anyone else" to confirm his detention and beating, or any evidence of the agreement, the compensation offered or received, or his ownership of a home. Finally, the IJ added that he did not accept Yang's testimony "at face value" and thus had "reached an adverse credibility finding."

On Yang's appeal, the Board upheld the IJ's ruling. Explicitly declining to base its decision on the IJ's adverse credibility finding, the Board instead accepted the IJ's conclusion that Yang had failed to introduce sufficient corroborating evidence about "his property ownership, his forced sale of such property, an agreement to sell the property (coerced or otherwise), or … his resistance to authorities' demands." The Board also agreed with the IJ that Yang had not "advanced any argument that corroborative evidence was not reasonably available to him."

Yang now argues that corroborative evidence should not have been required because his "coherent testimony" alone was found "inherently" and "internally" credible. It is true that an applicant's testimony—if credible, persuasive, and specific—may suffice to establish eligibility for asylum, *see* 8 U.S.C. § 1158(b)(1)(B)(ii); *Nadmid v. Holder*, 784 F.3d 357, 361 (7th Cir. 2015), but the IJ found Yang *not* to be credible. And the Board denied Yang's claim on the independent ground that he had not submitted corroborating evidence regarding his property and resistance to authorities that he reasonably could have obtained. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010). Yang does not even attempt to explain why such corroborating evidence was not necessary. He merely misapprehends the record, insisting that the BIA found his testimony "inherently credible" and that he had reasonable explanations for why he failed to provide corroborating evidence. Yang is wrong. There was no favorable credibility finding. In absence of a favorable credibility ruling, corroborating evidence was necessary. Therefore, the Board's denial of relief was proper.

At oral argument, Yang's new counsel argued for the first time that the IJ's adverse credibility finding was improperly based on Yang's lack of corroboration. This argument, however, not only is waived because Yang did not raise it in his petition, *see Nadmid*, 784 F.3d at 361, but also is misplaced because the Board rested its decision on the independent basis of insufficient corroboration, a conclusion that we find is supported by substantial evidence.

For the foregoing reasons, we DENY Yang's petition for review.